Mr. Kushner, you're also doing double duty today, and my comments about the Court Thank you. May it please the Court, my name is Jordan Kushner, and I represent the appellant River Smith. What I'm going to focus on here is that the District Court did a very substantial upward variance, you know, about double the minimum guidelines he calculated, you know, more than triple the guidelines that we say apply, should have applied, applied, and did it based on impermissible reasons. A very significant factor was Mr. Smith's controversial social and political views, you know, that he expressed on the Internet. It made him out to be a much worse criminal based on his speech, that in and of itself wasn't criminal in any way and never alleged to be criminal in any way. And so whatever kinds of prejudice, hatreds, you know, hostility, hostile views towards the government that he had, these are First Amendment protected views that are fundamental in our society for people to have that people have the right to have whatever views that they have, and they should not have been a basis to substantially upward his sentence. Robertson, counsel, I am concerned that the dramatic upward variance in the sent – from the sentencing guidelines occurred after the District Court discussed your client's political and ideological and social views. But this is an abuse of discretion standard. What's the evidence that there was an abuse of discretion in the sentence that was given? And so I argue the abuse of discretion is Mr. Smith's constitutional rights, that it held – it held – it held his – his beliefs against him. But what evidence is there in the – in the record? Well, it's – it's specifically talked about how he expressed prejudice to different groups of people. The government emphasized his – Mr. Smith's talk about, you know, his hostility, his antagonism towards law enforcement, which I believe was also cited by the District Court. So that was – that was a very central theme of the government's argument, was Mr. Smith's prejudices and his – and his antagonism towards the government. And the – and then this was discussed by the District Court in its – in its sentencing, you know, when it decided to, you know, explain its upward variance. And I know the District Court emphasized, you know, the prejudiced views he expressed, his anti-Semitic views, his – I think his racist views. I believe that – and I don't recall specifically if it mentioned his antagonism towards the government, but that was so heavily argued by the government, both in the written record and in the – and in what they presented to the court at the hearing, that I don't see how you can conclude that that wasn't a factor in what his ultimate sentence was, unless the District Court explicitly rejected it. I think the implication of the District Court's statements was that it clearly was adopting the concerns of what the government had. Robertson You've raised some similar concerns with regard to the conditions for a supervised release, and I'd like to discuss a few of those. In Condition No. 8, what's the definition of extremist views for purposes of that condition, and is there a definition of inappropriate material for purposes of that condition? Carvin And I think that question explains what the problem is, and I don't know, and so that puts Mr. Smith in a position where he's basically barred from looking at anything that's controversial, because it could be concealed. But what if the probation officer in the court considers it to be extremist and sends him back to prison? So this is so vague that it basically bars Mr. Smith from looking at – you know, from looking at anything that might be political or controversial of any sort. Robertson The type of conditions that are imposed by Conditions 5, 8, and 9 are common in child pornography-type cases. Is there any precedent for applying that type of restriction outside of the child pornography area in this circuit? Carvin I couldn't find any. You know, one of the cases the court cited, I think, involved, you know, a weapons charge where the person had a history of sex offenses, so there was concern about – and I think his probation violation was – had to do with failing to register and, you know, unsupervised contact, and so it was sex offense-related. So I can't find any – I didn't find any cases where these kinds of conditions were imposed where there was no – where there was no history of any kind of sex offense conduct. And then, you know, of course, in those cases, I think the conditions would be directed towards that kind of subject matter. You know, there's a very different – big difference between looking at pornography or things involving children or having contact with children, with being barred from looking at anything extremist or inappropriate, as the court mentioned, or, you know, just kind of an overall, you know, bar from using the Internet or social media without permission from the probation officer. And Mr. Smith, of course, you know, he had conduct that was a basis for a higher sentence improperly based on, you know, his activity on the Internet, but there was no allegation that anything he did on the Internet involved any crimes or any of his – he didn't even have contact with white supremacists, so-called extremist groups. I mean, this is someone who was bottled up in his home, you know, looking at the – spent all his time on the Internet. You know, he had no – basically was someone he communicated with on the Internet. So, this is someone who was really punished for his – I mean, for his thoughts and really for kind of being an outcast, you know, kind of an outsider, someone who was socially isolated, who was alienated, but not – none of this had resulted in any harm before. But, yeah, I think it all goes to the court punishing someone for their political views, both in terms of the, you know, how it decided to give him a much higher sentence, as well as, you know, imposing unreasonable conditions of supervision that don't allow him to live a reasonable life in modern times once he gets out of prison. And so, I'll address also – well, I guess – I should have three minutes for rebuttal. I think the acceptance of responsibility, let me just briefly touch on that. I don't – I didn't see any cases where someone was denied acceptance of responsibility, where there wasn't some kind of further criminal conduct afterwards, where he admitted his offense, and anything that he… I thought our Weinman case is – you've got to distinguish that on this argument. It comes pretty close to the same analysis. I'll take a look and address it on rebuttal, if that's okay. May it please the Court. The lower court did not abuse its discretion in imposing an upward variance such that the term of imprisonment in this case was one of 80 months. Indeed, the lower court – this is not the unusual case in which this Court has previously reversed a sentence as substantively unreasonable. Indeed, the government has addressed this issue in the briefs, both as a matter of procedural error, in that the court lowered… In trouble picking – I don't know if you're – you need to speak more slowly or change the mic. I'm not making out the – I'm not picking up the words. You're going too fast. Of course, Your Honor. I'll slow down. The government has interpreted this portion of the defendant's argument with respect to the length of his sentence, both in the cast of a procedural error and, indeed, as a substantive reasonableness. Now, with respect to the length of the sentence, the government points out that this Court has, indeed, imposed significant upward variances in like-firearms cases. While we did not cite all of these cases in our brief, we would be happy to do so… We know about them. …via 20HA letter. Thank you, Your Honor. Indeed, this – the lower court had before it an ample sentencing record that, indeed, Mr. Smith committed egregious acts not only with respect to the underlying offense conduct, but also the court viewed that evidence in light of his history and characteristics, and most importantly, and what weighed heavily on the district court in this case, matters of deterrence, protection of the public, and, indeed, rehabilitation. This is not a case where, in analogous sort of child pornography cases, we have a simple possession. This is not simply a case of Mr. Smith viewing the Internet for extreme materials. Indeed, the court considered evidence that, indeed, Mr. Smith used platforms to engage, to connect, and, indeed, to research and plot with respect to the use of firearms and the use of devices to further his… Are you addressing the supervised release conditions or the main attack on the variants itself? You haven't clarified that. Well, Your Honor, I think that both of the – the facts under – the factual findings are common amongst both of these two issues. Specifically, I think, first, with respect to the variants, that each of those factors weigh to, as I described, both the offense conduct, history and characteristics, protection of the public, and, indeed, deterrence. The argument this morning is the First Amendment implications of the court's comments in imposing the variants. Let's respond to that. Your Honor, in this case, the government submitted evidence before the district court that, indeed, Mr. Smith had not only previously engaged with extremist content involving not only the base, but, indeed, ISIS, Jihadi John, and sought out instructions for how to modify guns to make them fully automatic. But he also researched and connected with like-minded others with respect to white supremacist groups and Hitler's SS. It's not only the – or Mr. Smith's statements that the court considered. It's not that the district court punished him for it, but he used these statements in the context of the entirety of the record to understand the import of the underlying offense conduct in this case and the importance of deterrence in imposing sentence. And is there – the counsel basically says he can't do that. Is there a case that says it's perfectly – it's legitimate as well as reasonable, if you will, to take that into account, speech into account? Your Honor, this – He's basically saying you can't do that. You talk about my client's speech, you get reversed. Well, counsel, let me dig down into that. On pages 21 and 54 of your brief, you seem to tie the challenged special conditions directly to Smith's political, ideological, and social views. And I'll quote from your brief. Smith's statements revealed longstanding racist, Islamophobic, homophobic, and anti-law enforcement views. Based on that evidence, the court reasonably concluded these special conditions were tailored to meet the valid concerns for sentencing and the overall purposes of sentencing. Is there any precedent for punishing someone for their political views, even if they're abhorrent or repugnant? Your Honor, I disagree that what the district court did was punishment for these type of views. No, special conditions are restrictions on liberty, even if they're not punishment. Your Honor, I think what these statements – Do you have any cases supporting your position, your argument? Your Honor, this Court in United States v. Romig unpelled special conditions. In what case? United States v. Romig. That's 933F3-1004. And in that case, that was a restriction of association condition. But in that case, the Court understood that, indeed, certain conditions prohibiting defendants from First Amendment sort of association type of conduct are valid factors in considering rehabilitation and ensuring that a defendant doesn't, indeed, refer to a crime-inducing lifestyle. Let's look at condition number five. It's a complete ban on computer use. That would seem to be a little broad, wouldn't it? And condition eight, you can't look at things with extremist views or inappropriate material. What does that mean? Well, Your Honor, none of the conditions that have been challenged here by the defendant are, indeed, complete bans. They have included, as this Court has endorsed on several occasions, the permission or sort of gatekeeping function of the probation office. But aren't those in the context of child pornography? Well, Your Honor, they frequently do appear in this Court's jurisprudence on child pornography. But the same types of concerns with respect to deterrence, protection of the public, and, indeed, rehabilitation underlie a case like this where the district court rightfully considered that these types of mediums was the method and the platform by which Mr. Smith But the trouble is, how much authority is delegated to the probation officer to decide, well, I don't like those political views, so you can't watch that on the Internet or you can't use the Internet or whatever? That's very troublesome. Your Honor, this was not a specific issue raised below. This was a general First Amendment challenge to the restriction on speech. It's raised now. Your Honor, I think the context of the condition with respect to extremist or terroristic materials informs what this condition is set out to prevent. Here we have the district court considered evidence that the defendant himself said that he was an extremist when it came to firearms. What's inappropriate? Anything in the eyes of the probation officer? Your Honor, I would submit that that is not the way that this particular condition should be read. Indeed, the connection between the extremist That's not the way. If it can be read that way, then it's not written right. And the probation office wrote it, I have no doubt. Well, Your Honor, certainly because the vagueness challenge was not raised below, I'd be happy to submit additional authority if that is a concern of this Court. You'd be happy to what? Submit additional authority, if that would be We don't want another brief. If Your Honor would permit, I would like to briefly address the acceptance of responsibility point. No, that's a good thing to address. Your Honor, the district court here rightfully denied Mr. Smith acceptance of responsibility credit, as indeed Your Honor has pointed out, under such precedent as United States v. Wyman. Indeed, the district court considered several post-plea statements that Mr. Smith made that reflected that he did not hold sincere remorse or indeed recognize the criminality of his actions. Indeed, the sentencing judge is in a unique position to evaluate factual findings, and that is why this Court affords lower courts great deference in making these decisions. Here, the evidence before the district court indicated that Mr. Smith was actively plotting to reoffend, he understood that he would not be able to obtain firearms as a result of his conviction, and nonetheless stated in a recorded jail phone call that to live his life, he was going to need to do illegal things. Moreover, the context of these statements must be understood relative to the pre-plea statements that Mr. Smith made and the context of the circumstances of this case, and indeed the evidence presented before the Court in the context of the PSR relative to prior offense conduct in the wake of the seizure of Mr. Smith's firearms in 2019. Unless there are any further questions from the Court, we would rest on the briefs and ask the Court to affirm. Very good, thank you. Just quickly, let me clear up what was raised below with respect to challenging the release conditions. I'm looking at document number 91, the defendant's position on sentencing, and the First Amendment was certainly emphasized, but that wasn't the only challenge to the extensive citation from the Eighth Circuit as to the standards for evaluating conditions of supervised release, and I argue that it exceeded those standards. So the challenges were based on reasonableness as well as the First Amendment, and they're all tied in. So Mr. Smith didn't, you know, what's being argued about what Mr. Smith did that resulted in upward variance was his activity on the internet, that he had views that were considered extremist or prejudiced, and that he interacted with them about other people with other people. And so again, it's all within the First Amendment that he's discussing his views with other people on the internet. There's no allegation that anything he did crossed the line of into criminal conduct. He wasn't charged with any kind of criminal conspiracy. He wasn't charged with a criminal attempt. There was no suggestion that what he did crossed that line. This was, you know, this was the idle rumination that he had with other people, and it never went beyond the internet. And so it's all squarely within the realm of his First Amendment conduct. Now, on acceptance of responsibility, I did refresh my recollection as to why I'm in, and that was the first case I distinguished in my reply brief, which I apologize was submitted late, but it was, there was a combination of factors in there. So the defendant in that case made a public statement on social media, basically, you know, justifying what he did, you know, expressing anger at law enforcement for going after him. I don't see where that matters. I saw that in the reply brief, and I scratched my head, and I said, I'm not sure that has the significance you're attributing. He also denied it to the, he denied making the statement to the probation officer when asked about it, so he lied. And he also tested, avoided a test for methamphetamine, he tested positive for methamphetamine. So there are a number of things going on in that case. But I would submit that, you know, making statements privately on a jail phone call to relatives where he was effectively venting doesn't rise to the same level as publicly disavowing, you know, any responsibility for a criminal offense. So I think, you know, when you're, you know, you can certainly have mixed feelings and discuss your frustration with your loved ones about the situation you're in while you're working through it. I think what's significant is what Mr. Smith said on the record, what he said publicly, and he did make, there's no question that in his discussions with the probation officer that he was honest and took responsibility for the offense. And in his extensive letter to the judge, you know, which was his reasoned position about, you know, what he did, and there was, you know, that wasn't discussed by the judge at all. But if you look at his letter to the judge, he does, goes to a lot of reflection and contemplation, which by the way was written after, you know, the controversial phone call. So, you know, he has a chance to think about it, and then he puts it in perspective. And I think that he needs to be, you know, what, I mean, I understand there's no expectation of privacy in a jail call, but there should be some kind of limits in it as to how it can be used against someone when there's other statements in the record. Thank you very much. It is deferential review for us, of course. I understand. Thank you. Thank you, counsel. The case raises some interesting and significant issues. It's been, the argument's been helpful. We will take it under advisement.